

**CLERK, U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED
**THE DATE OF ENTRY IS ON**
**THE COURT'S DOCKET**

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed April 16, 2019**

_____
**United States Bankruptcy Judge**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| SCOTT ALAN ODAM, | § | CASE NO. 17-50035-RLJ7 |
| | § | |
| Debtor. | § | |

## MEMORANDUM OPINION

Hearing was held on February 20, 2019, on the motion of the chapter 7 trustee, Harvey Morton, seeking contempt sanctions against the debtor, Scott Alan Odam. Doc. No. 375.[1] Morton appeared at the hearing. Odam did not appear, but a woman who has accompanied him at prior hearings in his case was present. She did not make a formal appearance, however.

### I.

### A.

Morton submits that Odam failed to obey the Court's order of March 8, 2018 (entered on March 9, 2018) [Doc. No. 258], which found that Odam was a vexatious litigant and directed that

---
[1] All "Doc. No." references herein are to the present bankruptcy case, unless otherwise stated.

he not file, without prior permission from the Court, any pleading or other item challenging the trustee's (Morton's) qualifications to serve as trustee or his performance of his duties as the chapter 7 trustee. The order instructs that should Odam file any "pleadings, complaints, affidavits, or other documents" that violate the terms of the order, such items are subject to being stricken by the Court and the Court will consider contempt and sanctions against Odam.

Odam, according to Morton's motion, violated the March 8, 2018 order by his "pleading" that he filed on January 7, 2019, that is titled Judicial Notice of Invalid Ruling; 2nd Demand for Judicial Credentials; Alternatively, Appointment to Setoff; Habeas Corpus; Demand for Arbitration; and Notice of Trespass and Private Remedy (the "Notice") [Doc. No. 373]. Though the Notice is rambling and incoherent, as are all of Odam's filings, it was obviously filed in response to the Court's December 28, 2018 order [Doc. No. 371], which approved of the trustee's proposed sale of twelve rental properties held by the bankruptcy estate.

**B.**

The Notice is loaded with legal jargon, irrelevant quotes, and vague claims of Odam's rights as a sovereign citizen. It attacks Morton as trustee and the authority of the Court. By the Notice, Odam ignores the proscriptions and warnings of the March 8, 2018 order that found him to be a vexatious litigant; the tenor of the Notice further confirms this conclusion.

The Notice makes several charges, including the following:

- that, under the "Texas Civil Procedure [sic] and Remedies Code," the Court did not have authority to issue its order of December 28, 2018, which, as stated, approved of the trustee's sale of estate assets, Doc. No. 373 at 2;

- that the Court is not a "court of record" as required by the Texas Constitution and the United States Constitution, *id*. at 3;

- that the "tribunal [] is not independent of the magistrate who is conducting the proceedings," *id*. at 4;

- that the Court is "without jurisdiction by consent of any delegated authority" and without jurisdiction by reason of a lack of controversy, *id*. at 4–5;

- that the trustee lacked "standing" to bring his motion that sought approval of the sale of the rental properties, *id*. at 5;

- that he (Odam), the chapter 7 debtor here, has not "intentionally, knowingly and willfully submitted himself to the jurisdiction of the Bankruptcy Court," which he further supports with the following quote:

  > The signature block contains Odam's signature just above his typed name (in all caps) followed with "<u>By: Scott Odam, compelled agent/administrator and party in interest.</u>" Paragraph 7 states as follows: "[f]or the record, this cause of action is not meant to breathe life into the dissolved trust, and any filing with that appearance is only done as per the clerk's requirement and/or from a compelled agency to preserve the status quo."[2]

  *Id*. at 7;

- that there is "no evidence of nexus 'in this state'" and that he is a non-resident who does not have "minimum contacts" with the State of Texas, *id*. at 9;

- that, under the *Dred Scott* decision, he is a "state citizen" and "immune from any and all government attacks and procedure," *id*. at 10;

- that the undersigned, as a magistrate, and Morton, as the trustee, should provide for inspection a Foreign Registration Statement, anti-Bribery Statement, Oath of Office, and a Bond, *id*. at 11;

---

[2] The quote is from the Court's Memorandum Opinion that was entered on September 15, 2017 [Doc. No. 124]; the quoted language is an example of the "unusual statements and provisions" of a Declaration previously filed by Odam.

- that the trustee does not have a *proper* Oath of Office or Bond as the Bond identified for Harvey Morton as the trustee was issued under a fictitious name and witnessed by an individual using a fictitious name, *id*. at 12;

- that Harvey Morton as trustee has committed a crime and is "FIRED", *id*.;

- that the undersigned is "given 72 hours to issue subrogation," *id*. at 13;

- that notwithstanding this Court's lack of jurisdiction, Odam makes demand for habeus corpus, *id*.;

- that he has been subjected to slavery and involuntary servitude, *id*. at 14;

- that he is entitled to arbitration because of Platinum Bank's failure to respond to notices sent to the bank, *id*. at 14–15;

- that both the undersigned and the trustee are "acting defacto," have no immunity, and "must answer for their breach of duty to" Odam, *id*. at 17–18;

- that the Court must "remedy" its trespass and should be enjoined, *id*. at 19;

- that the conduct of the undersigned and the trustee constitutes an act of "high treason against the people," *id*. at 21;

- that "anyone executing" the December 28, 2018 order "is exceeding jurisdiction and is subject to personal liability . . . and consents to . . . being liable for the agreed damages of $512,790.00 without further notice; and further consents to binding arbitration . . . unless all defects are overcome and authority is proven on the record within 5 days." *Id*. at 22.

These charges are bizarre and improper. Odam fails to recognize the validity of court orders or the trustee's obligation to administer the assets of his bankruptcy estate. The trustee's motion to sell estate assets and the Court's consideration and ruling on such motion—the matters ostensibly

4

addressed by the Notice—are core matters over which the Court, as a bankruptcy court, has jurisdiction and authority. *See* 28 U.S.C. §§ 1334(b), 157(a), (b)(1), (2)(A), (N).

As a postscript, the Court notes that Morton was unable to close the sale and thus, per the Court's instructions, has abandoned the twelve rental properties. The abandonment causes the properties to revert back to Odam personally; they are no longer estate properties. (The rental properties are subject of a deed of trust lien now held by AimBank.)

## II.

### A.

As Morton contends, the Notice violates the Court's March 8, 2018 order. Odam did not obtain permission to file the Notice, and, fairly construed, the Notice constitutes an attack on the trustee and the Court. The Notice is filed in the form of an affidavit; it also states that it is issued *to* the "Magistrate" Robert L. Jones, Trustee Harvey Morton, and "All Others Acting in Concert with Them." Doc. No. 373 at 1. Such parties are instructed to "Take Notice" of what follows in the pleading.

As an item filed with the Court in the form of an affidavit, it is not a procedurally proper request for relief. Odam has filed many rambling, incoherent items with the Court that the Court has had to address. And though he is a pro se debtor, given his history here, the Court does not generously construe Odam's Notice.

### B.

Odam has filed seventy-one separate items in his chapter 7 case.[3] Like the Notice here, the vast majority of Odam's filings bear no relationship to any pleading or paper permitted or required

---

[3] Doc. Nos. 12, 25, 26, 28, 40, 41, 44–46, 67, 79–80, 82, 90, 95–96, 104, 109–10, 116–20, 129–30, 146–52, 154–56, 169, 171, 176–78, 188, 193, 195 ,197–98, 203–08, 223, 258, 264, 271, 283–84, 288, 295, 302, 307, 312, 329, 339, 345, 356–58, 363, 369–70, 373, 378–79, 381–82.

5

under the Federal Rules of Bankruptcy Procedure. Most are long, incoherent, and include extraneous materials. Both the court clerk and the Court have spent an inordinate amount of time attempting to characterize the nature of his filings and whether they raise a colorable claim or right to relief. Odam has caused what should be a relatively simple chapter 7 case to drag-on far longer than it should have.

Several of Odam's most recent filings are particularly troublesome. He has filed items which purport to be "by the Court," thus attempting to co-opt the authority of the Court. *See, e.g.*, Doc. Nos. 356–58, 363, 378, 382. Docket No. 379, filed on January 17, 2019, and titled 6th Notice, of Trespass and Opportunity to Cure, and for Ratification by U.S. Trustee William Neary, is signed as follows: "By: scott-alan: odam©, Beneficiary." Included with this filing is an "Affidavit of Criminal Activity against Magistrate Robert L. Jones, Trustee Harvey Leon Morton, and Office Manager Tina Stephens [sic]." It "charges" this judge, the trustee, and the Court's divisional manager of multiple federal crimes. The Court does not know if Odam has filed this item as part of any other public record.

### C.

Morton requests that the Court enforce contempt by issuing a fine against Odam. A fine will not resolve the issues raised by Odam's conduct. The only effective remedy here is dismissal with prejudice. Dismissal is a proper remedy for contempt. *See Deutsch v. Annis Enters., Inc.*, 882 F.3d 169, 176 (5th Cir. 2018) (". . . courts are generally required to impose the least onerous sanction which will address the offensive conduct.") (internal quotation and citation omitted); *accord In re Hughes*, 360 B.R. 202, 209 (Bankr. N.D. Tex. 2007) (describing two purposes of civil contempt of which one is to coerce compliance with the court's orders). *See also Eldorado Canyon Props., LLC*, 505 B.R. 601, 604 (B.A.P. 1st Cir. 2014) ("Section 105 provides a bankruptcy court with statutory contempt powers. . . . Those powers include discretionary *sua*

6

*sponte* dismissals.") (internal quotation and citation omitted).[4]

### D.

Morton reports that he is presently holding $55,996.69 that he has collected during the case. The Court, in its discretion, may retain jurisdiction over the funds and Morton's distribution of the funds. *See Miranne v. First Fin. Bank, F.S.B. (In re Miranne)*, 87 B.R. 897, 902–03 (E.D. La. 1988), *affirmed by* 861 F.2d 1278 (5th Cir. 1988). Odam's many filings and his conduct have interfered with the due administration of this case. Odam's conduct has frustrated and unduly delayed the trustee in his efforts to administer the assets of this case. The trustee should not go uncompensated for his efforts. He rightfully assumed the cooperation of Odam. The Court also understands that AimBank may assert an interest in the funds.

### III.

The Court possesses authority to dismiss Odam's case without request from a party in interest, the trustee, or the debtor. *See, e.g.*, *Tennant v. Rojas (In re Tennant)*, 318 B.R. 860, 869 (B.A.P. 9th Cir. 2004) ("Section 105(a) makes 'crystal clear' the court's power to act sua sponte where no party in interest or the United States trustee has filed a motion to dismiss a bankruptcy case."). *Cf. Little Creek Dev. Co. v. Commonwealth Mortg. Corp. (In re Little Creek Dev. Co.)*, 779 F.2d 1068, 1071 n.1 (5th Cir. 1986) (confirming the bankruptcy court's authority to raise the issue of good faith *sua sponte*); *In re Metro. Realty Corp.*, 433 F.2d 676, 679 (5th Cir. 1970) ("As soon as the lack of good faith affirmatively appeared, the district court acted properly in dismissing the petition even though the plan stage had not been reached.") (internal citation omitted). Likewise, § 105 empowers the Court to issue contempt orders that dismiss the debtor's case. *See Eldorado Canyon Props.*, 505 B.R. at 604; *In re McMahan*, 481 B.R. 901, 915 (Bankr. S.D. Tex. 2012)

---

[4] All "section" or "§" references herein are to Title 11 of the United States Code, unless otherwise stated.

(describing the court's authority to consider the potential for abuse in every case and issue any order necessary or appropriate to prevent abuse under § 105(a)).

Courts have considered whether *sua sponte* dismissals violate due process and, generally, conclude that they do not if the debtor was provided notice and an opportunity for a hearing. *Hammers v. I.R.S. (In re Hammers)*, 988 F.2d 32, 34–35 (5th Cir. 1993) (finding no due process violation where the debtor's chapter 13 case was dismissed *sua sponte* because the debtor had notice of an issue with her case by the trustee's objection to her plan and the court's order to convert to another chapter or face dismissal).

In addition, at least one court held that if, upon dismissal, the court's order will prohibit the revesting of property back to the entity from which it came, then the debtor must have sufficient notice and an opportunity to respond.[5] *In re Prud'Homme*, 161 B.R. 747, 751–52 (Bankr. E.D.N.Y. 1993) (instructing a secured creditor to file and serve upon the debtor an intent to seek dismissal subject to an order stating that property of the estate would not revest in the debtor because, "[d]ue process . . . prohibits the consideration of such unrequested relief without affording the Debtor notice and an opportunity to be heard.") (citing *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306 (1950); *Pennoyer v. Neff*, 95 U.S. 714 (1878)).

Due process concerns signal that the Court should give notice and an opportunity to respond to its intent to dismiss and to retain jurisdiction over estate property.

The Court will issue its order of contempt against Odam and to show cause why his case should not be dismissed with prejudice for a period of two years, and, further, why the Court should not retain jurisdiction over the funds recovered by the trustee.

### End of Memorandum Opinion ###

---

[5] *See* § 349(b)(3), which states, "Unless the court, for cause, orders otherwise, a dismissal . . . revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case . . . ."